[Cite as *State v. Schooler*, 2020-Ohio-4327.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28596 |
| | : | |
| v. | : | Trial Court Case No. 2019-CRB-4669 |
| | : | |
| KIM SCHOOLER | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of September, 2020.

. . . . . . . . . . .

ANDREW D. SEXTON, Atty. Reg. No. 0070892, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 335 West Third Street, Room 390, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

GLENDA A. SMITH, Atty. Reg. No. 0070738, P.O. Box 15353, Wyoming, Ohio 45215
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Kim Schooler appeals from her conviction following a bench trial on one count of assault, a first-degree misdemeanor.

{¶ 2} Schooler advances two assignments of error. First, she contends the trial court erred in sustaining an objection when she tried to impeach the victim's testimony with a prior inconsistent statement. Second, she claims the trial court erred in failing to find that she acted in self-defense when she sprayed the victim with mace. Therefore, she argues that her conviction was against the manifest weight of the evidence.[1]

{¶ 3} The present appeal stems from an incident that occurred inside the rental office of an apartment complex on September 11, 2019. The first witness at trial was the victim, Elaine Washington. She testified that she went to the office to complain to Litisha Thompson, the office secretary, about Schooler's conduct. When Washington entered the office, Schooler already was there lodging her own complaint. Washington testified that she approached the secretary's window but kept her distance from Schooler. According to Washington, she was "nowhere near" Schooler and stayed "way far" away from her inside the office. Washington testified that she and Schooler were not talking to one another inside the office, and Schooler did not say anything directly to her. Washington denied making any threats to Schooler, moving toward Schooler, or putting her hands on Schooler. Washington also denied reaching into her own back pocket, which she claimed was empty. According to Washington, Schooler suddenly came toward her and sprayed

---

[1] Under her second assignment of error, Schooler references convictions for aggravated menacing and aggravated assault. She was charged with these offenses, however, she was not convicted of them. For present purposes, we will construe her second assignment of error as a challenge to her assault conviction on the basis that she was acting in self-defense. This plainly is what she intends to argue.

mace or pepper spray in her face.

{¶ 4} On cross-examination, Washington confirmed that she did not say anything to Schooler before being sprayed. Defense counsel then attempted to ask Washington what she had told a defense investigator the prior day on the telephone. In particular, counsel asked whether Washington had told the investigator that she had told Schooler, "No one argues with my sister." (Trial Tr. at 10.) The prosecutor raised a hearsay objection. (*Id.*) Defense counsel responded: "Your Honor, this is actually impeachment. I'm impeaching her prior inconsistent statement, so it's not hearsay." (*Id.* at 11.) The prosecutor then argued: "Yeah, but you are using it by your own statements. You don't have the person here to testify to those inconsistent statements." (*Id.*). The trial court sustained the hearsay objection, telling defense counsel and Schooler, "You would need your investigator here to provide that inconsistent statement. Not you. So I'll sustain." (*Id.*) The trial court also refused to allow defense counsel to impeach Washington with evidence of her prior conviction for abuse of the 9-1-1 system. The trial court found a lack of evidence that the offense involved dishonesty or a false statement as required by Evid.R. 609. (*Id.* at 11-13.)

{¶ 5} The next witness was Thompson, the apartment complex office secretary. She testified that Schooler was inside the office talking to her about people outside "messing" with Schooler. According to Thompson, Washington entered the office and asked Schooler why Schooler was "messing" with "Keisha" and trying to fight Keisha. Thomson testified that a conversation ensued between Washington and Schooler. (*Id.* at 20-21.) Thompson added, however, that the two women stayed four or five steps away from one another during the conversation. Thompson also testified that Washington did

not threaten or touch Schooler. Thompson did not see Washington reach into a pocket. According to Thompson, she did hear Schooler tell Washington to get out of Schooler's "f***ing face." Thompson testified that Schooler made this statement despite the fact that Washington was not in Schooler's face, as the two women remained four or five feet apart. (*Id.* at 21-22.) With the women still this distance apart, and without any threats from Washington, Schooler sprayed Washington in the face. (*Id.* at 23.) Thompson characterized Schooler's demeanor as "very angry" and "mad" during the encounter, while Washington was "calm" prior to being sprayed. (*Id.* at 24.) On cross-examination, Thompson acknowledged that prior to the spraying, she repeatedly heard Washington ask Schooler something like, "Why do you want to start with Keisha." (*Id.* at 26.)

{¶ 6} The third witness at trial was Lakeisha Burton, the person known as "Keisha." She testified about encountering Schooler outside shortly before the macing incident. According to Burton, Schooler confronted her and began threatening her and acting aggressively. Burton eventually "argued back." (*Id.* at 32.) Schooler subsequently went into the office where she sprayed Washington and then left. (*Id.* at 34.)

{¶ 7} The next witness was Michael Schwartz, a police officer with the city of Dayton. He testified about responding to the spraying incident and speaking with Washington at the scene. He noticed a strong odor of mace or pepper spray in the office. He also observed that Washington's eyes were swollen and watering. Schwartz also spoke to Schooler, who went to the police station to make her own complaint. According to the officer, Schooler told him she had used pepper spray in self-defense because someone was attempting to assault her. (*Id.* at 52.) Following Schwartz's testimony, the State rested.

{¶ 8} The first defense witness was Joanne George, an investigator for the public defender. George testified about speaking to Washington on the phone the previous day. The prosecutor initially objected to George testifying that Washington admitted having made comments to Schooler in the apartment office. Defense counsel argued that the testimony should be allowed since counsel was not permitted to impeach Washington on the subject due to the prosecutor's hearsay objection. Ultimately, the prosecutor dropped the objection to avoid having a potential issue on appeal. (*Id.* at 60-61.) George then testified that Washington had admitted getting in Schooler's face and arguing about why Schooler wanted to fight Lakeisha Burton. (*Id.* at 61.)

{¶ 9} The final witness was Schooler. She testified that on the day in question, several apartment residents were upset and were taunting her outside, in part because she had been recording their drug activity. Those residents included Lakeisha Burton. Schooler explained that she went into the office to report the issue to Thompson. Schooler testified that Burton and others followed her inside, and the others encouraged Burton to assault Schooler. According to Schooler, Washington then entered the office and got directly in Schooler's face as Schooler backed up. (*Id.* at 71.) Schooler testified that at one point someone told Washington to cut Schooler's face. Schooler stated that Washington responded by reaching into a pants pocket. Fearing for her life, Schooler stated that she then sprayed Washington in the face. (*Id.* at 72.) Schooler testified that there were people everywhere, that she had no way out of the situation, and that she repeatedly had asked Washington to get out of her face. (*Id.* at 72-73.)

{¶ 10} Based on the evidence presented, the trial court found Schooler not guilty of aggravated menacing and not guilty of menacing. The trial court found her guilty of

misdemeanor assault. It imposed a sentence that included a partially suspended jail term and credit for time served. The sentence also included a year of probation, a requirement for a psychological assessment, and a stay-away order.

{¶ 11} In her first assignment of error, Schooler contends she should have been allowed to impeach Washington's direct examination testimony about not saying anything to Schooler inside the office. Specifically, Schooler claims defense counsel should have been permitted to ask Washington whether Washington told the investigator that she (Washington) had told Schooler, "No one argues with my sister." Schooler contends this inquiry could not have involved hearsay because "Elaine [Washington] is saying what Elaine [Washington] said." (Appellant's brief at 9.)

{¶ 12} Upon review, we are unpersuaded that the testimony sought to be elicited from Washington could not possibly have been hearsay because she was being asked about her own out-of-court statement. *See*, *e.g., State v. Grubb*, 4th Dist. Lawrence No. 1735, 1985 WL 17460, *3 (Dec. 12, 1985) (recognizing that "a witness' own statements made to other persons are no exception to the hearsay rule"). Under Evid.R. 801(C), "hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here any statement concerning what Washington told the investigator she said to Schooler in the office would be a statement other than one made by the declarant, Washington, while testifying at trial. What Washington told the investigator she said to Schooler also would not qualify as non-hearsay under Evid.R. 801(D)(1), because Washington's statements to the investigator and to Schooler at the scene were not under oath.

{¶ 13} We doubt, however, that the statement, "No one argues with my sister," was

offered to prove the truth of the matter asserted. Defense counsel was not seeking to prove that no one argues with Lakeisha Burton. Rather, defense counsel was seeking to prove that Washington spoke to Schooler in the office. The truth of what Washington allegedly said was immaterial. Defense counsel merely wanted to impeach Washington's claim that she did not talk to Schooler in the office by establishing that she did say something, without regard to the truth of the remark. And, if such a statement had been admitted, it could only have been used for purposes of impeachment and not as substantive evidence.

{¶ 14} We need not dwell on the foregoing issue, however, because the trial court's resolution of it constituted at most harmless error. As set forth above, office secretary Thompson testified that she overheard Washington ask Schooler why Schooler was "messing" with "Keisha." Thompson proceeded to testify about the two women engaging in a conversation in the office. Even more significantly, the prosecutor dropped his objection to investigator George testifying about what Washington had said to her on the phone the prior day. In substance, this testimony was virtually identical to what defense counsel sought to elicit from Washington. Under these circumstances, we are firmly convinced that Schooler was not prejudiced by the trial court's hearsay ruling.

{¶ 15} Under her first assignment of error, Schooler also claims the trial court erred in not allowing her to impeach Washington with evidence of a 2011 conviction for abuse of the 9-1-1 system. Schooler argues that the conviction was admissible under Evid.R. 609(A)(3) because the crime involved dishonesty or a false statement. Schooler reasons that Washington "presumably" was convicted of violating R.C. 2917.32, which involves knowingly making or reporting a false alarm or knowingly reporting an offense that did not

occur.

{¶ 16} While a violation of R.C. 2917.32 necessarily may involve dishonesty or a false statement, the record reflects that Schooler was convicted of a different offense, namely "abuse of the 9-1-1 system." Although defense counsel did not elaborate on this offense below, abuse of the 9-1-1 system is a violation of a Dayton city ordinance, R.C.G.O. 137.12. In relevant part, R.C.G.O. 137.12(A) prohibits using or allowing use of a telephone "for the purpose of calling the emergency 9-1-1 telephone system other than in an emergency situation." The trial court correctly recognized that misusing the 9-1-1 telephone system does not necessarily involve dishonesty or a false statement. That being so, the trial court did not abuse its discretion in refusing to allow Schooler to use Washington's conviction in the absence of facts establishing that Washington's particular offense involved dishonesty or a false statement. Because Schooler produced no such evidence, the trial court correctly sustained the State's objection to Schooler's use of the conviction. The first assignment of error is overruled.

{¶ 17} In her second assignment of error, Schooler contends her assault conviction was against the manifest weight of the evidence. She argues that the weight of the evidence established that she acted in self-defense. Schooler claims the only contrary evidence came from Washington, the victim, who lacked credibility.

{¶ 18} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 19} With the foregoing standards in mind, we conclude that Schooler's assault conviction was not against the manifest weight of the evidence. Under R.C. 2903.13(A), the offense of assault involves knowingly causing or attempting to cause physical harm to another person. Here Schooler admitted intentionally spraying Washington in the face, which caused pain to Washington and resulted in her eyes swelling. Based on the record before us, the trial court certainly could have found that Schooler knowingly caused physical harm to Washington.

{¶ 20} The only issue was whether Schooler acted in self-defense. Under the version of R.C. 2901.05 effective March 28, 2019, the State bore the burden to prove beyond a reasonable doubt that Schooler did not spray Washington in self-defense. "In Ohio, a defendant is not entitled to a finding of self-defense if (1) the defendant was at fault in creating the situation giving rise to the affray, (2) the defendant did not have a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such danger was in the use of such force, or (3) the defendant violated any duty to retreat or avoid the danger." (Citations omitted.) *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 39.

{¶ 21} Here the trial court could have found that the foregoing elements were not satisfied. At a minimum, the trial court reasonably could have found beyond a reasonable doubt that Schooler lacked a bona fide belief that she was in imminent danger of great

bodily harm. Contrary to Schooler's argument, Washington's testimony was not the only evidence refuting a finding of self-defense. As set forth above, office secretary Thompson testified that she witnessed the interaction between Washington and Schooler inside the office. Thomson recalled that Washington entered the office and asked why Schooler was "messing" with "Keisha." Thompson stated that the two women then engaged in conversation. Thompson testified that the women stayed several feet apart at all times and that Washington did not threaten Schooler, touch Schooler, or get in Schooler's face. Thompson also did not see Washington reach into a pocket for anything. According to Thompson, Schooler sprayed Washington in the face while the women were several feet apart and without any preceding threats from Washington. Thompson characterized Schooler's demeanor as "very angry" and "mad" during the encounter, while Washington was "calm" prior to being sprayed. We also note that Thompson's testimony was at odds with many aspects of Schooler's own testimony about what occurred in the office leading up to the spraying.

{¶ 22} Based on its ruling, the trial court appears to have relied heavily on Thompson's testimony in resolving conflicts in the evidence and finding Schooler guilty of assault. We are mindful that "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *Wallace-Lee* at ¶ 38. Here the trial court acted well within its discretion in crediting

Thompson's testimony, finding no self-defense, and finding Schooler guilty of assault.

Accordingly, the second assignment of error is overruled.

{¶ 23} The judgment of the Dayton Municipal Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Andrew D. Sexton
Glenda A. Smith
Hon. Christopher D. Roberts