[Cite as *State v. Avery*, 2023-Ohio-3570.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| CRAIG D. AVERY | : | Case No. 2022 CA 00160 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common Pleas, Case No. 2022 CR 0307B


JUDGMENT:        Affirmed


DATE OF JUDGMENT:        October 2, 2023


APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

KYLE L. STONE        GEORGE URBAN
PROSECUTING ATTORNEY        116 Cleveland Avenue NW
       Suite 808
 BY: Christopher A. Piekarski        Canton, OH 44702
     110 Central Plaza South, Suite 510
     Canton, OH 44702-1413

*King, J.*

{¶ 1}    Defendant-Appellant Craig Avery appeals the November 10, 2022 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}    On January 7, 2022, a group of people gathered at the home of K.T. on Gilbert Circle in Canton, Ohio, a high-crime area. K.T. lived with her four children, ages 17, 13, 10, and 3. The victim in this matter, T.L. was the father of the three-year old. He did not live with K.T., but they co-parented the child.

{¶ 3}    On the evening of January 7, T.L went to K.T.'s home after he got off work. When T.L. arrived, K.T.'s children were present along with friends of the oldest child, D.M. D.M.'s friends were N.R., M.C., and M.M. After T.L. arrived, he and K.T. went to the liquor store and returned with some Hennessy cognac. K.T.'s sister M.H. showed up shortly thereafter with some food. The adults settled in the living room to drink and eat, and the teenagers hung out in the kitchen. M.M. was drinking alcohol and the other teens were smoking marijuana.

{¶ 4}    At some point 16-year-old Avery showed up as well. He had been to K.T.'s home at least once before. As the evening wore on, Avery and T.L. became hostile with one another over Avery's reluctance to tell T.L. who his parents are. No physical altercation took place, however, the two spent some time "mean-mugging," or staring one another down and bickering.

{¶ 5}    While that was going on, T.L.'s friend K.H. showed up to by some marijuana from T.L. Shortly thereafter, Avery called his friend, 17-year-old Ajani Smith to come over.

{¶ 6}   Around midnight, T.L. and K.T. decided to go get beer before the local drive through closed. Around that time Smith arrived wearing all black and a mask. K.T. told both Smith and Avery they could not stay at her home and told them to leave. T.L., K.T., M.C., Smith, and Avery all went outside. M.H. stood in the front doorway looking outside. T.L. walked to the driver's side of his car which was parked in the driveway. K.T. again told Smith to leave and to get off her property. Instead of leaving, Smith responded by pulling a gun on K.T.

{¶ 7}   Seeing what was going on, T.L. moved toward Smith and K.T. and yelled for Smith to get the gun out of K.T.'s face. At that point Avery was in the street by his car which was parked across from the back end of T.L.'s car. As T.L. approached K.T., Smith ran off and started shooting. Avery started shooting from the street at the same time. Both teens then got into two separate stolen vehicles and fled the scene. Traffic cameras showed them travelling away from the scene in the same direction.

{¶ 8}   When the shooting started, K.T. and M.C. ran into the house. Once the shooting stopped and K.T. realized T.L. had not come inside, she went outside to investigate. She found T.L. dying on the ground in front of his car.

{¶ 9}   Police and EMS arrived to process the scene and remove T.L.'s body. Police located 17 spent cartridge cases at the scene which were later determined to have come from three different guns. One led bullet core was recovered from the trunk of T.L.'s car and another from underneath T.L.'s body. Several bullet holes were found in the front of the house brick, front door, and windows.

{¶ 10} Canton Police Detective Mark Diels spoke with multiple witnesses including K.T. M.C., M.H., D.M., M.M., and N.R. Based on his investigation Diels put together two

photo arrays. K.T. identified Avery as one of the shooters and M.H. identified Smith as the other. Of all the witnesses he spoke to, only N.R. said T.L. had a gun.

{¶ 11} Avery was eventually located and interviewed. He denied driving the stolen vehicle, having a gun, or shooting a gun that night. He also never said T.L. pulled a gun on him.

{¶ 12} Canton-Stark County Crime Lab firearms expert Abigail Ilijevski examined the bullets and shell casings in this matter. After doing so, she entered her findings into the National Integrated Ballistic Information Network or NIBIN. The network can help determine if a firearm is used in other incidents. Ilijevski later received a potential match to a Springfield .9mm firearm which was seized in another Ohio county. Iljevski determined to a reasonable degree of scientific certainty that the Springfield weapon was used in this incident. No other firearms were recovered.

{¶ 13} Franklin County Deputy Coroner Dr. Todd Barr examined T.L.'s body. T.L had three gunshot wounds with both entrance and exit. Entrance wounds consisted of one to T.L.'s left chest, one to his left buttock and one just above the back of his right ankle. The chest wound was fatal because the bullet perforated T.L.'s pulmonary arteries. The cause and manner of death were determined to be multiple gunshot wounds and homicide respectively.

{¶ 14} Avery and Smith's cases were bound over to the Stark County Grand Jury which subsequently returned an indictment charging both Avery and Smith with one count each of adding or abetting murder along with attendant three-year firearm specifications.

{¶ 15} A joint jury trial began on October 31, 2022. The state called 11 witnesses and elicited the above outline testimony. Avery called three witnesses, his friends D.M., M.C., and N.R.

{¶ 16} D.M. testified she, N.R., and M.M. never went outside and she did not see what happened outside. She heard 3-4 shots. She never saw T.L. or his friend K.H. with guns that night. She did not know why K.M. showed up, but did know Avery felt like he had to call Smith to come over after K.M. arrived.

{¶ 17} M.C. testified she was outside when the shooting started. She stated Avery fired shots first, but claimed it was after T.L. "clutched" at his pants like he was going to draw a gun. But she did not know if T.L. had a gun. M.C. stated she never saw Smith in possession of a gun or shooting a gun. During trial M.C. said she saw a gun lying on the ground beside T.L. after he was shot, but then admitted that on the night of the incident she told police she never saw T.L. with a gun.

{¶ 18} On direct examination, N.R. testified he watched what happened through the screen door but did not go outside. When police spoke to him after the shooting, however, he stated he was upstairs. N.R. testified he saw Avery pull a gun first and then T.L. pulled a gun. He testified Smith never pulled a gun. On cross examination N.R. stated he told police that T.L.'s friend K.H. showed up with two guns but on the stand said that was not true. At trial N.R. testified T.L. had a gun but he also admitted he never told police T.L. had a gun.

{¶ 19} Avery requested and received a self-defense jury instruction. The state requested and received a flight instruction. The jury convicted Avery and Smith as

charged. Avery was later sentenced to 15 years to life with a consecutive 3-year prison term for the firearm specification.

{¶ 20} Avery filed an appeal and the matter is now before this court for consideration. He raises three assignments of error as follow:

I

{¶ 21} "THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED."

II

{¶ 22} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL BECAUSE THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT."

III

{¶ 23} "THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

I, II, III

{¶ 24} Avery's three assignments of error are interrelated and will therefore be addressed together. Avery argues the state failed to produce sufficient evidence to prove he aided or abetted Smith in shooting and killing T.L., and the jury lost its way in finding that he did. He argues Smith shot T.L. He additionally argues that because the state failed

to disprove the matter of self-defense during its case-in-chief, the trial court erred when it failed to grant his Crim.R. 29 motion for acquittal. We disagree.

Applicable Law

{¶ 25} A Crim. R. 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial. *State v. Blue,* 5th Dist. Stark No. 2001CA00250, 2002-Ohio-351, citing *State v. Williams,* 74 Ohio St.3d 569, 576, 1996-Ohio-91, 660 N.E.2d 724; *State v. Miley,* 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist. 1996). Crim . R. 29(A) allows a trial court to enter a judgment of acquittal when the State's evidence is insufficient to sustain a conviction. A trial court should not sustain a Crim. R. 29 motion for acquittal unless, after viewing the evidence in a light most favorable to the State, the court finds no rational finder of fact could find the essential elements of the charge proven beyond a reasonable doubt. *State v. Franklin*, 5th Dist. Stark No. 2007-CA-00022, 2007-Ohio-4649 at ¶ 12, citing *State v. Dennis*, 79 Ohio St.3d 421, 1997-Ohio-372, 683 N.E.2d 1096.

{¶ 26} On review for sufficiency, a reviewing court is to examine the evidence presented at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  See also*, State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

{¶ 27} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990).  The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

Avery's Arguments

{¶ 28} First, as to Avery's complaint that the state failed to produce sufficient evidence to prove he shot T.L., or aided and abetted in the shooting of T.L., at trial Avery advanced the affirmative defense of self-defense. In so doing, Avery necessarily admitted that he shot and killed T.L. but did so in self-defense. We therefore reject Avery's claims that the state failed to prove he shot and killed T.L.

{¶ 29} Next Avery argues the state presented no evidence to disprove his claim that he acted in self-defense. While Avery frames this argument as a sufficiency challenge, the state's burden of disproving a defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, --- N.E.3d ---- ¶27.

{¶ 30} R.C. 2901.05(B)(1) provides:

(B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶ 31} The defendant has the initial burden of production, which is the burden of producing evidence "that tends to support" that the defendant used force in self-defense. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, --- N.E.3d ---- ¶ 21. The burden then shifts to the state under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense. *Id.* at ¶ 24. In other words, if the evidence tends to support that the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. *Id.* at ¶26; *State v. Gatewood,* 1st Dist. Hamilton No. C-190654, 2021-Ohio-3325, ¶ 68. The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson,* 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986). Accord, *State v. Staats,* 5th Dist. Stark No. 2019CA00181, 2021-Ohio-1325 ¶ 28.

{¶ 32} The state was required to disprove at least one of the following: 1) Avery was not at fault in creating the situation giving rise to the affray, 2) Avery had reasonable

grounds to believe and an honest belief even if mistaken that he was in imminent danger of death or great bodily harm and that he did not use more force than necessary to defend against the attack and 3) Avery must not have violated any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 79, 388 N.E.2d 755 (1979) (citations omitted);

{¶ 33} In this matter the jury was instructed in relevant part as follows:

At fault. The defendant did not act in self-defense if the State proved beyond a reasonable doubt that the Defendant was at fault in creating the situation that resulted in the death. Defendant was at fault if the Defendant was the initial aggressor and

A, [T.L.] did not escalate the situation by using [sic] the first to use deadly force or attempt to use deadly force; or

B, the defendant provoked [T.L.] to use deadly force; or

C, the Defendant did not withdraw from the situation; or

D, the Defendant withdrew from the situation, but did not inform [T.L.] of his withdraw by words or acts to [T.L.]

Test for reasonable grounds and honest belief. In deciding whether the Defendant had reasonable grounds to believe and an honest belief that he was in imminent or immediate danger of being killed or receiving great bodily harm, you must put yourself in the position of the Defendant, with his characteristics, his knowledge or lack of knowledge, and under the circumstances and conditions that surround him at the time. You must consider the conduct of [T.L.] and

decide whether his acts and words caused the Defendant to reasonably and honestly believe that the Defendant was about to be killed or receive great bodily harm. In determining whether the Defendant, in using force in self-defense, reasonably believed that the force was necessary to prevent injury, loss, or risk of life or safety, you may not consider the possibility of retreat by the Defendant.

No duty to retreat. The Defendant had no duty to retreat before using force in self-defense if the Defendant was in a place in which he lawfully had a right to be. Lawfully had a right to be means that the Defendant was not trespassing when he used force in, in self-defense.

Trespass. A trespass occurs when a person knowingly enters or remains on the land or premises of another without privilege to do so.

* * *

Words. Words alone do not justify the use of force. Resort to deadly force is not justified by abusive language, verbal threats, or other words no matter how provocative.

Unreasonable force, A person's [sic] allowed to use force that is reasonably necessary under the circumstances to protect himself from an apparent danger. For you to find the Defendant guilty, the state must prove beyond a reasonable doubt that the Defendant used more force than reasonably necessary and that the force was

greatly disproportionate to the apparent danger. In deciding whether

the force used was greatly disproportionate to the apparent danger,

you may consider whether the force used shows revenge or criminal

purpose.

{¶ 34} Transcript of Trial, volume III(B) 26-30.

{¶ 35} Evidence presented by the state at trial showed there was tension in the home when Avery became rude and antagonistic with T.L. after he asked who Avery's parents were. T. (I), 177-178, 208-209. M.H. observed Avery texting after he became angry with T.L. and Smith showed up shortly thereafter. T. (I) 210-212. Neither M.H. nor K.T. saw T.L. or his friend K.H. with guns that night, and both testified there was never a physical altercation between Avery and T.L. before the shooting. T. (I) 187-188, 209-210. Just before T.L. and K.T. left to go to the drive through, K.T. told Avery he was no longer welcome in her home. T. (I) 178. Smith, who had just showed up, was also asked to leave. T. (I) 181, 210-211.

{¶ 36} Further evidence presented by the state showed T.L., K.T, M.C., Avery, and Smith all went outside together while M.H. stood in the front doorway. T(I) 182, 213. T.L. walked to his car which was parked in the driveway, and Avery ran towards his vehicle situated on the street behind T.L.'s vehicle. T(I) 182, 214. Instead of leaving as asked, Smith became belligerent with K.T. and K.T. told Smith to get off of her property. *Id.* In response, Smith pulled a gun, and pointed it at K.T. *Id.* T.L. saw what was happening and yelled for Smith to get the gun out of T.L.'s face. T(I) 182. Smith ran off while shooting his

gun. Avery simultaneously fired his gun from the street towards T.L. and his car. T(I) 185, 214.

{¶ 37} The state's evidence therefore showed Avery and Smith were at fault for creating the situation that led to T.L.'s death. Each eyewitness testified there was tension inside the home. Once outside, however, instead of simply leaving as they were asked to do, Avery and Smith reignited the feud and escalated the situation from one of mere words and dirty looks to one involving the unreasonable use of deadly force when Smith pulled a gun on K.T. Moreover, because Avery and Smith had been asked to leave, any privilege the two may have had to be on K.T.'s property and in her home evaporated upon her clear revocation of that privilege. Therefore, even if Avery somehow felt threatened, he had a duty to retreat.

{¶ 38} Avery argues his witnesses, M.C. and N.R. both testified T.L. had a gun, testimony which he argues supported his affirmative defense of self-defense. While these witnesses did testify on direct examination that T.L. had a gun, on cross-examination both admitted or were confronted with the fact that they changed their stories regarding T.L.'s possession of a gun and other important details between their statements the night of the incident and trial. T. (II) 235-248, T.(IIIA) 66-69. The jury could have therefore reasonably found the testimony of M.C. and N.R. was not credible.

{¶ 39} Finally, Avery argues shell casings from three different weapons were recovered at the scene and the state made no effort to explain that fact. Manifest weight and sufficiency standards, however, look to what evidence was produced, not what was not produced. Moreover, the incident took place in a high crime area and none of the witnesses testified to hearing more than four shots or seeing more than two shooters.

{¶ 40} We find the trial court did not err in overruling Avery's Crim.R. 29 motion, that the state produced sufficient evidence to support Avery's conviction for aiding and abetting murder and that the jury did not lose its way in so convicting Avery. We further find the state met its burden of proving beyond a reasonable doubt that Avery did not act in self-defense.

{¶ 41} Avery's three assignments of error are overruled.

{¶ 42} The judgment of the Stark County Court of Common Pleas is affirmed.

By King, J.,

Wise, P.J. and

Delaney, J. concur.