[Cite as *State v. Barnes*, 2025-Ohio-1684.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/ City of Toledo                     Court of Appeals No. L-24-1100

    Appellee                                             Trial Court No. CRB-23-06010

v.

Catrease Barnes

    Appellant                                    **DECISION AND JUDGMENT**

                             Decided: May 9, 2025

* * * * *

Rebecca Facey, Esq., Toledo Municipal Court Prosecutor, and
Jimmie L. Jones, Esq., Toledo Municipal Court Assistant Prosecutor, for appellee.

Anthony J. Richardson, II, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a bench trial, the defendant-appellant, Catrease Barnes, was convicted by the Toledo Municipal Court of assault and sentenced to one year of probation. For the following reasons, we affirm.

# I.     Background

{¶ 2}   On June 14, 2023, the victim, J.A., arrived at her home to find her ex-boyfriend, M.N., having sex with the defendant, Catrease Barnes, in the basement. During the melee that followed, Barnes sprayed the victim with mace and was later arrested for assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree.

{¶ 3}   The trial court held a bench trial on September 19, 2024.  Before trial, Barnes filed a "notice of self-defense," pursuant to Crim.R. 12.

{¶ 4}   According to the evidence offered at trial, the victim rents a home with her son on Berdan Avenue in Toledo.  For many years, the victim was in a relationship with M.N., and she allowed M.N. to live with her.  The victim described M.N. as an abusive and violent person, who frequently caused her to "fear [for her] life."  In late April of 2023, the couple broke up, but M.N. "wouldn't leave."  So, in May, the victim filed eviction papers to start the process of having M.N. removed from her home.

{¶ 5}   The incident in this case occurred on June 14, 2023—while the eviction case was pending and M.N. was still residing at the victim's home.  Around 11:00 p.m., the victim arrived home with her dog.  She testified that, as soon as they entered the house, the dog ran downstairs to the basement, which was "odd."  The victim could hear sounds coming from the basement that "sounded like a porno," and she walked downstairs to see "whatever her name is on the floor, on the dirty basement floor having sex with [M.N.]."  The woman, Catrease Barnes, is the defendant in this case.

2.

{¶ 6} The victim said that she did not care that her ex-boyfriend was having sex in her home, but she *was* concerned for the safety of her dog because M.N. had recently "kicked" and thrown the dog "on a wall." According to her, M.N. "stopped" having sex when he saw the dog, and when the victim reached for the dog, M.N. grabbed the victim and "thr[ew]" her on a couch and held her down "with his hands on [her] neck." The victim could not breathe and "almost pass[ed] out." [1] When M.N. "finally let [her] up," the victim began to experience a "panic attack" and wanted to "go outside" for fresh air. The victim recalled walking in a "bent over" position toward the stairs. She testified, "I was trying to go towards the stairs. But [Barnes] was in the stairway. . . and [she] maced me. So now I can't breathe and I can't see." The victim denied that she presented "any threat" to Barnes or that she attempted to assault or "engage with" Barnes. After spraying the victim with mace, Barnes ran out of the house, and the victim called 911.

{¶ 7} The next witness to testify was Toledo Police Detective Tyler Gawrych, who interviewed Barnes by phone, later that night. Barnes told the detective that the victim "assault[ed]" M.N. "first" by pulling his hair, and then "[went] after" Barnes, which led to Barnes "pepper spray[ing]" the victim.

{¶ 8} Barnes testified in her own defense. According to her, when the victim appeared in the basement, she accused M.N. of "doing this on purpose" and "instantly grabb[ed] his hair and start[ed] attacking him." While M.N. and the victim tussled,

---

[1] According to the record, M.N. was also prosecuted.

3.

Barnes "jumped up" to find her clothes. Barnes corroborated the victim's testimony, that M.N. "restrained" the victim to allow Barnes "time to get out," as the victim "kick[ed], scream[ed] [and] curs[ed]" at them. Barnes described what happened next:

> I grabbed my stuff. . . And I was trying to finish putting my clothes [on]. I still only had one shoe. . . because they were on my shoe. [The victim] ended up getting up and walking towards me. So I hurry up and grabbed my stuff because I felt like she was about to do something to me. . . . [S]he started pulling up her pants up like she was going to attack me. So she [was] like ["]B get out of my house.["]. And I'm like ["]I'm going.["] I turned around to go up the stairs. She grabs my foot. . . She let it go. I'm still going up the stairs. She grabs them again. And now he's behind her grabbing her, by her foot, telling her to get off me. So when she grabbed [my foot] the second time, my shoe came off my foot. I maced her. And she start[ed] screaming somebody's name. I don't know who it was. But she was screaming somebody's name, sitting on the stairs. And I just ran up the stairs. . . I ran out the door. That was that.

{¶ 9} The trial court found Barnes guilty of assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree and sentenced her to serve 180 days in jail, which it immediately suspended on the condition that she successfully serve a one-year term of "inactive probation" and have no contact with the victim.

{¶ 10} Barnes appealed. She raises two assignments of error for our review:

> (1) The trial court improperly held appellant was a trespasser subject to being harmfully or offensively touched.

> (2) The state failed to demonstrate appellant did not mace the alleged victim in self-defense beyond a reasonable doubt.

4.

## II.     Law and Analysis

{¶ 11} As an initial matter, we note that Barnes does not challenge the sufficiency or weight of the evidence supporting the offense of assault.  Indeed, Barnes admits that she intentionally sprayed the victim with mace, causing injury.  *See, e.g., State v. Schooler,* 2020-Ohio-4327, ¶ 19 (2d Dist.) (Assault conviction was not against the manifest weight of the evidence where defendant admitted that she intentionally sprayed victim in the face with mace).  Instead, Barnes claims that the State failed to disprove her self-defense claim beyond a reasonable doubt.  "The elements of the crime and the existence of self-defense are separate issues. . . Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged." *State v. Griffin,* 2024-Ohio-5846, ¶ 13 (6th Dist.), quoting *State v. Petway,* 2020-Ohio-3848, ¶ 46 (11th Dist.).   Barnes also claims that the trial court erred in finding that she was trespassing at the time of the assault.

{¶ 12} Pursuant to 6th Dist.Loc.App.R. 10(H), the State filed a Notice of Conceded Error.  The state "concedes" that the trial court erroneously "assumed" that Barnes was trespassing at the time of the assault, which caused the trial court to "ignore[e] Appellant's claim of self-defense."

{¶ 13} We address Barnes's self-defense argument first.

### A.  The fact finder's rejection of Barnes's self-defense claim was not against the manifest weight of the evidence.

{¶ 14} There are two types of self-defense in Ohio: (1) defense against danger of bodily harm, also known as non-deadly force self-defense; and (2) defense against danger

5.

of death or great bodily harm, or deadly force self-defense. *State v. Rice*, 2022-Ohio-3291, ¶ 58 (7th Dist.). Barnes asserted the use of non-deadly force self-defense at trial.

{¶ 15} In a case involving the use of non-deadly force, an accused is justified in using force against another if "(1) [s]he was not at fault in creating the situation giving rise to the affray; (2) [s]he had reasonable grounds to believe [and] an honest belief that. . . [s]he is in imminent danger of bodily harm, and (3) [s]he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm." *State v. Greer,* 2023-Ohio-103, ¶ 33 (6th Dist.), quoting *State v. Paskins*, 2022-Ohio-4024, ¶ 48 (5th Dist.). "Because each element must exist for a self-defense claim to prevail, the [S]tate can defeat a self-defense claim by disproving any one of these elements beyond a reasonable doubt." *State v. Knuff,* 2024-Ohio-902, ¶ 191. "[A] determination as to whether the trial court applied the correct legal standard in reviewing and weighing the evidence presents a question of law requiring de novo review." *Greer* at ¶ 33, citing *Dublin v. Starr,* 2022-Ohio-2298, ¶ 33 (10th Dist.).

{¶ 16} In *State v. Messenger*, 2022-Ohio-4562, the Ohio Supreme Court clarified the burden of proof where a defendant asserts a claim of self-defense under the version of the statute that became effective March 28, 2019. That is, "R.C. 2901.05(B)(1) triggers the State's duty to disprove self-defense so long as 'there is evidence presented that tends to support that the accused person used the force in self-defense'"—a burden that is not all that heavy. *Id.* at ¶ 20, 22 ("The reference in R.C. 2901.05(B)(1) to 'evidence presented that tends to support' self-defense indicates that the defendant's burden of

6.

production is not a heavy one and that it might even be satisfied through the state's own evidence."). As such, "a defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *Id.* at ¶ 25. "[I]f the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden," and the State must then disprove self-defense. *Id.* at ¶ 25. In that case, "the sufficiency-of-the-evidence standard of review applies to [the defendant's] burden of production and a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *Id.* at ¶ 26. The State's burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal. *Id.* at ¶ 27.

{¶ 17} In evaluating a manifest weight challenge involving self-defense, we must review the entire record, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to its finding that the state disproved at least one of the elements of self-defense beyond a reasonable doubt. *State v. Gibson*, 2023-Ohio-1640, ¶ 12 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 18} Here, Barnes produced sufficient evidence, by way of her own testimony, that tended to show that she acted in self-defense when she assaulted the victim. That is, Barnes testified that the victim told Barnes to "get out," and Barnes replied, "I'm going

7.

[and] turned to go up the stairs." But, as Barnes was walking up the basement steps, the victim "grabbed" Barnes's foot, twice. After the second time, Barnes "maced" the victim because Barnes was "scared" the victim "was going to attack [her]." Viewing that evidence in the light most favorable to Barnes, we find that a rational trier of fact could find all the elements of a self-defense claim. Therefore, Barnes satisfied her burden of production, and the burden shifted to the State to disprove self-defense by establishing beyond a reasonable doubt that Barnes (1) was at fault in creating the situation giving rise the affray; or (2) that she did not have reasonable grounds to believe or an honest belief that she was in imminent danger of bodily harm; or (3) that she used more force than was reasonably necessary to defend against the imminent danger of bodily harm.

{¶ 19} Contrary to the state's "concession of error," the trial court did not "ignore" Barnes's self-defense claim. Indeed, the trial court fully analyzed whether the State had disproven Barnes's self-defense claim beyond a reasonable doubt. The trial court concluded that although Barnes was not the "initial aggressor," the victim's act of "pulling on [Barnes's shoe]" did not place Barnes "in immediate danger of bodily harm." The trial court also concluded that Barnes used disproportionate force by using mace. Therefore, the court determined that the state "rebutted [Barnes's claim of self-defense] successfully."

{¶ 20} Because it is dispositive of Barnes's self-defense claim, we will confine our analysis to the third element of self-defense, i.e., whether Barnes used more force than was reasonably necessary to defend against the imminent danger of bodily harm.

8.

{¶ 21} Self-defense is not available "unless the defendant shows that the force used to repel the danger was not more than the situation reasonably demanded." *State v. Johnson,* 2009-Ohio-3500, ¶ 12 (6th Dist.), citing *Close v. Cooper,* 34 Ohio St. 98, 100 (1877). "When one uses a greater degree of force than is necessary under all the circumstances, it is not justifiable on the ground of self-defense. *Id.,* citing *State v. McLeod*, 82 Ohio App. 155, 157 (9th Dist.1982). In *Johnson,* we found that the jury did not lose its way in rejecting the defendant's claim of self-defense, where the defendant was found to have "punched [the victim] ten times and kicked [him] fifteen more times, all while [the victim was] lying helpless and unconscious on the ground, not moving at the time." *Id.* at ¶ 14; *see also State v. Lane,* 2023-Ohio-1305, ¶ 27 (6th Dist.) ("Moreover, the force used by Lane—stomps and kicks to [the victim's] face and body— was grossly disproportionate to the danger he faced and more than was reasonably necessary to repel the alleged attack.").

{¶ 22} Here, the trial court, acting as the trier of fact, found Barnes's testimony regarding the incident more persuasive than the victim's testimony. That is, it found that the victim, by "pulling back on [Barnes's] foot," was the initial aggressor, not Barnes. But, it also found that Barnes's response was "not proportional [because] pulling on your shoe does not result in macing."

{¶ 23} On appeal, Barnes insists that her use of mace was a "natural response" and reasonable under the circumstances, because she "perceived" that the victim was attempting to "pull her down [the stairs]." But Barnes did not testify at trial that she

9.

feared falling down the stairs. Rather, the defense argued that "the only way to get away from that attack was to use the pepper spray." Further, at the time Barnes maced the victim, Barnes was being assisted by M.N. who was "behind [the victim] grabbing" her and demanding that she release Barnes. This evidence further supports the trial court's conclusion that the use of mace, under these circumstances, was unreasonable. The trial court, acting as factfinder, was "free to believe some, all or none of each witness's testimony and [to] separate the credible parts of the testimony from the incredible parts." *Greer* at ¶ 41.

{¶ 24} We find that the trial court's rejection of Barne's self-defense claim was not against the manifest weight of the evidence because, based upon the testimony and evidence presented, a reasonable factfinder could have found that Barnes used more force than was reasonably necessary to defend against the imminent danger of bodily harm. Moreover, the state was only required to disprove one of the three elements of self-defense in order to defeat Barne's self-defense claim. *Knuff,* 2024-Ohio-902, at ¶ 191. As in *Knuff*, Barnes's claim "collapsed" once the court found that she used excessive force. *Id.* at ¶ 195-196.

{¶ 25} Accordingly, we find Barnes's second assignment of error not well-taken.

**B. Barnes failed to show that the trial court's finding that she was trespassing was reversible error.**

{¶ 26} In her first assignment of error, Barnes challenges the trial court's finding that she was trespassing at the time of the assault.

10.

{¶ 27} In reaching its guilty verdict, the trial court observed that Barnes was "trespassing" in the victim's home "[b]ecause if you don't know her, she doesn't know you. She comes down [to the basement] and sees a trespasser in her home."

{¶ 28} In Ohio, "[a] trespasser is not entitled to assert self-defense to justify an assault upon another who legitimately used non-lethal force to exclude him from the property." *Ellis v. State*, 64 Ohio St.3d 391, 395 (1992); *see also, State v. White*, 2019-Ohio-4288, ¶ 15 (4th Dist.) (No plain error in trial court's instruction to the jury that "[i]f the Defendant was unlawfully or without privilege to be at the location where the defensive force was used, then in that event, the defense of self-defense is not available."); *see also State v. Lampkins,* 1993 WL 179993, *4 (10th  Dist. May 18, 1993) ("By trespassing in [the victim's] home in the early morning hours, appellant did do something to cause the affray" and therefore his self-defense claim is barred); *See State v. Avery*, 2023-Ohio-3570, ¶ 37 (5th Dist.) (self-defense is not available to a defendant who violates a duty to retreat).

{¶ 29} Barnes insists that she was not a trespasser that night but rather M.N.'s "social guest," because M.N. maintained a "legal right to be there," which included the right to "host guests." The State agrees. In its Concession of Error, it claims that the trial court erroneously "assumed" that Barnes was trespassing "even though she was invited into the home."

{¶ 30} At trial, neither party raised the issue of Barnes's legal right to be in the home that evening. Upon review, the record includes some testimony to indicate that

11.

Barnes may have been privileged to be there by virtue of M.N.'s invitation. *See, e.g. State v. Hohman,* 14 Ohio App.3d 142, 143 (12th Dist.1983) (reversing conviction for criminal trespass where a labor organizer visited a nursing home to talk to employees and the evidence showed that he was "invited to the home by some of the residents"). On the other hand, the record also indicates that any privilege ended when the victim instructed Barnes to "get out of my house." *See, e.g., Avery* at ¶ 35, 37 (5th Dist.) (Defendant violated a duty to retreat after the victim "told [defendant] he was no longer welcome" on the victim's property and the defendant pulled out a gun instead of "simply leaving." Even if he initially had the privilege to be on the victim's property, that "evaporated upon her clear revocation of that privilege.").

{¶ 31} Regardless, even if the trial court erred in finding that Barnes was trespassing at the time of the assault, the error was harmless. Under Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." That is, the error must have been prejudicial. *State v. Harris,* 2015-Ohio-166, ¶ 36. Here, there was no prejudice given that the trial court fully considered Barnes's self-defense claim despite its observation that Barnes was "trespassing" in the home. While the trial court found that the State successfully rebutted Barnes's assertion of self-defense, its full consideration of her self-defense claim renders harmless any finding that she may have been trespassing.

{¶ 32} Accordingly, we find that Barnes's first assignment of error is not well-taken.

12.

### III. Conclusion

**{¶ 33}** After our review of the entire record, we conclude that the trial court, as fact-finder, did not clearly lose its way or create a manifest miscarriage of justice when it found that the State proved beyond a reasonable doubt that Barnes did not act in self-defense when she committed the offense of assault against the victim.  Similarly, we find any error in finding that the victim was trespassing at the time was harmless as a matter of law.  Therefore, we find Barnes's first and second assignments of error not well-taken, and we affirm the trial court's March 26, 2024 judgment.  Barnes is ordered to pay the costs of this appeal pursuant to App.R. 24.  It is so ordered.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

_____
JUDGE

Charles E. Sulek, P.J.
CONCURS.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.