[Cite as *State v. Gibson*, 2023-Ohio-1640.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220283 |
| | | TRIAL NO. 22-CRB-2278 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| GARLAND GIBSON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 17, 2023


*Emily Smart-Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Joseph Cossins*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1}  Following a dispute between defendant-appellant Garland Gibson and the mother of their three children, victim Seretha Turner, Mr. Gibson was found guilty of domestic violence.  On appeal, he maintains that the evidence established that he acted in self-defense, thus rendering his domestic violence conviction against the manifest weight of the evidence.  However, Ms. Turner's testimony sufficed to support a domestic violence conviction and to negate Mr. Gibson's self-defense claim, and we see nothing in the record that undermines the trial court's judgment.  Accordingly, we overrule Mr. Gibson's assignment of error and affirm the judgment of the trial court.

I.

{¶2}  On the evening of February 13, 2022, Superbowl Sunday, Ms. Turner drove to Mr. Gibson's residence to pick up two of their children (she had picked up the third the day before).  A swirling exchange of angry texts between the pair preceded her arrival, and by the time she pulled up, it was clear that Mr. Gibson was intoxicated (and angry).  Ms. Turner waited a few minutes, and then her children wandered outside on the cold evening without their coats on, which irritated her.  She stepped out of the car as Mr. Gibson followed the children out of the home.

{¶3}  At that point, Ms. Turner noticed that Mr. Gibson was stomping towards her car, and she realized that his anger was directed toward her daughter, already situated in the car. Ms. Turner, in an attempt to protect her daughter, stepped forward to stop Mr. Gibson.  She testified that, as she stood in his way, he pushed her to the ground and, as she reached out to try to prevent herself from falling, one of his dreadlocks got tangled in her fingers and fell off.  Mr. Gibson, on the other hand, testified that she attacked him first, pulling out one of his dreadlocks, and that she fell

2

down as he defensively pushed her off of him. Despite these disparate accounts, both parties agree that Mr. Gibson was threatening to physically punish their daughter when Ms. Turner intervened.

{¶4} Following this violent interaction, the children in the car began to cry and scream. Their eldest daughter hurled a curse word towards Mr. Gibson, which further enraged him. He continued approaching the car, admonishing his daughter not to use that kind of language and again threatening to physically punish her. Ms. Turner pulled herself up from the ground and once again inserted herself between Mr. Gibson and the children in the car. Undeterred, Mr. Gibson threw her back to the ground.

{¶5} Eventually, Mr. Gibson walked inside his residence, and Ms. Turner called the police. The police arrived at the scene about a half hour later and spoke with both individuals. Ms. Turner showed the police her injured fingers and complained of a sore side. She immediately left for the hospital after departing from Mr. Gibson's residence, and the doctor who treated her diagnosed bruised ribs from the falls.

{¶6} Police arrested Mr. Gibson that same night and the state charged him with domestic violence under R.C. 2919.25(A). A protective order followed. In April 2022, following a bench trial, the court found Mr. Gibson guilty. At a subsequent sentencing hearing, he received a suspended sentence of 180 days in jail with credit for time served. He was sentenced to 11 months of probation, which included requirements that he remain employed and have no contact with his family until he made progress with alcohol abuse treatment. After receiving leave by this court to file a delayed appeal, Mr. Gibson appealed, insisting that his domestic violence conviction was against the manifest weight of the evidence due to his self-defense claim.

3

II.

**{¶7}** Mr. Gibson insists that his domestic violence conviction was contrary to the manifest weight of the evidence where the weight of the evidence established that he acted in self-defense.

**{¶8}** When faced with a manifest weight of the evidence challenge, we must consider whether the state "carried its burden of persuasion" before the trial court. *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26; *see State v. Martin*, Slip Opinion No. 2022-Ohio-4175, ¶ 26. Unlike the burden of production, which concerns a party's duty to introduce *enough* evidence on an issue, the burden of persuasion represents a party's duty to convince the factfinder to view the facts in his or her favor. *Messenger* at ¶ 17. Therefore, in order for us to conclude that the factfinder's adjudication of conflicting evidence ran counter to the manifest weight of the evidence—which we reserve for only the most exceptional circumstances—we must find that the factfinder disregarded or overlooked compelling evidence that weighed against conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387-388, 678 N.E.2d 541 (1997). We accordingly sit as a "thirteenth juror" in this respect. *Id.*

**{¶9}** Pursuant to R.C. 2919.25(A), "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Mr. Gibson does not contest that he and Ms. Turner share three children, nor that he twice pushed her away from him. Rather, he maintains that he took his actions in self-defense, and he challenges the trial court's rejection of this argument.

**{¶10}** Ohio's recently amended self-defense law requires that, "if there is evidence presented at trial that tends to support that the defendant used force against another in self-defense or in defense of another, the state must prove beyond a

reasonable doubt that the defendant did not use the force in self-defense or defense of another." *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49, citing R.C. 2901.05(B)(1). "Once the initial showing is made, the burden of persuasion requires the state to disprove at least one of the elements of self-defense * * * beyond a reasonable doubt." *Id.* at ¶ 49.

{¶11} Here, the fact that Mr. Gibson lost a dreadlock during the altercation tends to support a conclusion that he acted in self-defense. Therefore, the burden shifted to the state to disprove self-defense by establishing beyond a reasonable doubt that the defendant: (1) was at fault in creating the situation giving rise to the affray; (2) did not have reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm; or (3) violated a duty to retreat or avoid the danger. *Id.* at ¶ 50, citing *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.

{¶12} "The state need only disprove one of the elements of self-defense beyond a reasonable doubt." *Id.* at ¶ 51. Therefore, in evaluating a manifest weight challenge involving self-defense, we must review the entire record, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to its finding that the state disproved at least one of the elements of self-defense beyond a reasonable doubt. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶13} Mr. Gibson suggests that he was not at fault in creating the situation leading to him injuring Ms. Turner because she attacked him first. However, both individuals testified that Mr. Gibson was threatening to physically punish their daughter and approaching their daughter in anger. Ms. Turner testified that he

attacked her as she attempted to prevent him from harming their daughter. Had Mr. Gibson not issued these threats or attempted to physically confront his daughter, it is reasonable to assume that the dispute leading to Ms. Turner's injuries never would have occurred. While Mr. Gibson testified that Ms. Turner attacked him first (pulling out his dreadlock), the trial court sat in the best position to weigh the credibility of the witnesses and was free to believe or disbelieve her testimony (that she accidentally pulled out his dreadlock as she fell after being pushed). And in fact, on the record, the trial court noted that Ms. Turner seemed very credible while testifying while Mr. Gibson seemed to be a less reliable witness.

{¶14} Mr. Gibson draws our attention to the Twelfth District's decision in *State v. Montgomery*, 12th Dist. Clermont No. CA2015-03-028, 2015-Ohio-4652. This case stands for the proposition that seeing and hearing testimony is not the sole criterion for judging credibility, and that even testimony that is delivered with sincerity may not be believable. *Id.* at ¶ 23. Fair enough, but in this case, Ms. Turner's testimony was sufficiently consistent and believable, and nothing in the record persuades us otherwise.

{¶15} On this record, we cannot say that the trial court clearly lost its way or created a manifest miscarriage of justice in determining that the state proved beyond a reasonable doubt that Mr. Gibson was at fault in creating the situation that led to him harming Ms. Turner. And because the state must disprove beyond a reasonable doubt just one of the elements of self-defense, Mr. Gibson's arguments with respect to the second and third elements are moot.

{¶16} Accordingly, we overrule Mr. Gibson's sole assignment of error.

\* \* \*

6

**{¶17}** In light of the foregoing analysis, we overrule Mr. Gibson's sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**WINKLER, J.**, concurs.
**BOCK, J.**, concurs separately.

**BOCK, J.**, concurring separately.

**{¶18}** I concur in the majority's opinion because I agree that Mr. Gibson was at fault in creating the situation when he threatened to physically harm his daughter. But I write separately to discuss credibility determinations and eye contact.

**{¶19}** When rendering its decision, the trial court stated, "Mr. Gibson would not look at me when I swore him in to tell the truth. So when I'm looking at demeanor of witnesses, no one else can see, hear, or feel the things that I'm seeing, hearing or feeling. He would not even look at me when I was swearing him in to tell the truth."

**{¶20}** To be clear, I do not believe that the trial court's credibility determination was based solely on the defendant's lack of eye contact. After all, the trial court noted that it could see, hear, and feel the defendant's demeanor. I write separately to address credibility determinations based on eye contact as a general concern, not one specific to this trial judge or this case.

**{¶21}** Demanding eye contact as proof of sincerity ignores that a witness may struggle with making eye contact for perfectly legitimate reasons. For example, victims of sexual assault may avoid eye contact due to fear or shame. *See, e.g., State v. Artis*, 6th Dis. Lucas No. L-19-1267, 2021-Ohio-2965, ¶ 23 (Grandmother testified

7

that her grandchild avoided eye contact while telling her how she was sexually assaulted.). People who are on the autism spectrum or have ADHD often exhibit poor eye contact. *See, e.g., Chartkoff v. Am. Elec. Power*, S.D.Ohio No. 2:16-cv-1186, 2018 U.S. Dist. LEXIS 50762, *8 (Mar. 27, 2018) ("Dr. Kaufman noted facts he found consisted with a diagnosis of autism, including that Plaintiff had poor eye contact and rarely used non-verbal gestures during the examination."); *Dept. of Edn. v. Leo W.*, 226 F. Supp. 3d 1081, 1109 (D.Haw.2016) (" '[P]oorly modulated eye contact' was noted as an indication of autism, but it is also 'very common' in people with ADHD[.]"). Social anxiety disorder, post-traumatic stress disorder, and shyness may also contribute to poor eye contact. And when one is undergoing the stress and anxiety caused by defending against criminal charges, that stress and anxiety might be the very reason that a person cannot maintain eye contact.

{¶22} When it comes to eye contact, one size does not fit all. I encourage trial courts to consider reasons for lack of eye contact beyond lack of credibility. Please note:

The court has recorded its entry on the date of the release of this opinion.