[Cite as *State v. Pitts*, 2025-Ohio-2030.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                  Court of Appeals No. L-24-1050

     Appellee                                                  Trial Court No. CR0202202607

v.

Andre Pitts                                                  **DECISION AND JUDGMENT**

     Appellant                                                  Decided:  June 6, 2025

* * * * *

Julia R. Bates and Brenda J. Majdalani, for appellee.

Laurel Kendall, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of a February 8, 2024 judgment of the Lucas County Court of Common Pleas, convicting appellant, following a jury trial, on one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree.  Appellant was sentenced to an indefinite term of incarceration, ranging from a minimum term of seven years to a maximum term of ten and one-half years.  For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Andre Pitts, sets forth the following five assignments of error:

I. The State of Ohio did not prove by a preponderance of the evidence that appellant did not act in defense of others, such that his conviction for felonious assault was against the manifest weight of the evidence.

II. In the alternative, appellant's conviction for felonious assault was against the manifest weight of the evidence.

III. The medical records here were improperly used for investigative purposes, arguably in violation of Evid.R. 803(4).

IV. The trial court abused its discretion when it allowed a detective to offer an arguably professional medical opinion concerning the victim, based on his review of medical records, and without corroboration by a medical professional.

V. Appellant received ineffective assistance of counsel when counsel did not object to statements made by a detective concerning the victim's medical condition, which were arguably investigative, and stipulated to the admission of medical records which were unredacted.

{¶ 3} The following undisputed facts are relevant to this appeal. This case arises from an incident which occurred in the early morning hours of September 1, 2022, following a night of heavy drinking by two groups of friends, previously unknown to one another, who randomly crossed paths at a downtown Toledo bar.

{¶ 4} On August 31, 2022, Ho Nguyen and P.T., the victim in this case, were co-workers at a Toledo-area nail salon. Following their shift at work that day, the friends went out for drinks at the Cock N' Bull, a downtown Toledo bar.

{¶ 5} That same evening, appellant, who worked at a downtown Toledo restaurant, also went out for drinks at the Cock N' Bull, likewise with a co-worker following their shift at work. As the evening progressed, appellant noticed, and became increasingly agitated by, the victim, who first caught appellant's attention when attempting to give him an unsolicited, unwanted fist bump. As appellant acknowledged during trial

2.

testimony, "[The victim was] a typical drunk guy [who] tried to give me a fist bump and I [didn't] want a fist bump. This has been the same guy that been around the bar the whole night[,] just everywhere." Subsequent to the attempted fist bump, appellant stated to his friends, "I'm going to fuck that dude up", after which they attempted to calm him down.

{¶ 6} Later that night, Nguyen, went outside, laid down on a bench, and eventually fell asleep on the bench, while waiting for the victim, who had remained inside the bar until closing time. After the bar closed, the remaining patrons, including the victim, appellant, and appellant's friends, went outside and stood in the vicinity of the bench where Nguyen had fallen asleep.

{¶ 7} In explaining the protocol when out drinking with the victim, Nguyen testified, "[W]hen we go out and, you know, [and] we [are] both drunk, if [the victim] was too drunk, I will wake him up like that [tapping him], or if me, [if] I am more drunk than him, then he would come and tap me to wake me up * * * that's normal, we tap each other."

{¶ 8} Appellant and his friends were standing outside smoking cigarettes after the bar closed. The victim then came over, uninvited, and stood with appellant and his friends, further aggravating appellant, who testified that the victim had, "Joined our party, and just kinda stood there, for real."

{¶ 9} Shortly thereafter, the victim walked over to the bench to awaken Nguyen, which, as stated above, Nguyen testified was customary and was done, as needed, on a reciprocal basis. Nguyen did not wake up, and was injured by the victim's effort to rouse him.

3.

{¶ 10} As the victim attempted to awaken Nguyen, appellant erupted, darted directly at the victim, and punched the victim squarely in the head with such a degree of force that the victim fell onto the concrete pavement, with appellant falling on top of him. The victim sustained a traumatic brain injury, and fragments of his teeth went into his lungs. The victim's injuries included subdural hematoma, herniation, subarachnoid hemorrhage, skull fracture, acute respiratory failure, cerebral contusion, cerebral edema, cerebral infarction, and hydrocephalus.

{¶ 11} A witness who was passing by during the incident observed appellant strike the victim. In response, the witness called 9-1-1, and then attempted to assist the victim, in response to which appellant threatened the witness. Emergency services and law enforcement arrived on the scene several minutes later. The victim was transported for emergency medical treatment, and law enforcement began investigating the incident. In the interim, appellant and his friends had fled the scene. Appellant was subsequently identified as the perpetrator.

{¶ 12} On September 20, 2022, appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree. On September 18, 2023, a jury trial commenced. On September 19, 2023, a mistrial was declared due to language translation issues regarding witness Nguyen. On February 5, 2024, after the translation issue was rectified, a second jury trial commenced. On February 8, 2024, appellant was found guilty and sentenced to an indefinite term of incarceration, ranging from a minimum term of seven years to a maximum term of ten and one-half years. This appeal ensued.

4.

{¶ 13} In the first assignment of error, appellant argues that the trial court erred in determining that the state disproved appellant's self-defense claim beyond a reasonable doubt, such that the felonious assault conviction was against the manifest weight of the evidence. We do not concur.

{¶ 14} As this court held in *State v. Bulger*, 2023-Ohio-4004, ¶ 20 (6th Dist.),

> To support a claim of self-defense involving the use of non-deadly force, the defendant must show that (1) he was not at fault in creating the situation giving rise to the affray; (2) he has reasonable grounds to believe or an honest belief that [another] was in imminent danger of bodily harm, and (3) he did not use more force than was reasonably necessary to defend against the danger of bodily harm. *Greer*, 6th Dist. Lucas No, L-22-1082, 2023-Ohio-103 at ¶ 33, quoting *State v. Paskins*, 200 N.E.3d 684, 2022-Ohio-4024, ¶ 48 (5th Dist.).

{¶ 15} In conjunction, as this court held in *State v. McClain*, 2025-Ohio-577, ¶ 22 (6th Dist.),

> In evaluating a manifest weight challenge involving self-defense, we must review the entire record, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to its finding that the state disproved at least one of the elements of self-defense beyond a reasonable doubt. *State v. Gibson*, 2023-Ohio-1640, ¶ 12 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 16} In applying these governing legal principles to this case, appellant's self-defense claim in this case is premised upon the claimed defense of another, specifically, Nguyen, the victim's friend with whom the victim went to the bar with on the night of the incident.

{¶ 17} Nguyen testified that he and the victim had become good friends while working together at a Toledo-area nail salon. Nguyen testified that after finishing their shift at work on August 31, 2022, they went to the Cock N' Bull bar in downtown

5.

Toledo, arriving at approximately 7:00 p.m. Nguyen testified that the people in the bar were friendly, he and the victim were together most of the evening, but at approximately midnight he went outside and laid down on a bench, while the victim remained inside the bar until closing time.

{¶ 18} Nguyen explained, "I waited [outside on the bench] for a while, a long time, so I fell asleep." Nguyen elaborated that he and the victim had a protocol when they would go out drinking together, testifying, "[W]hen we go out and, you know * * * if [the victim] was too drunk, I will wake him up like that [tapping on him], or if me, I'm more drunk than him, then he would come and tap me to wake me up." Nguyen then testified regarding the incident itself, "When I woke up [after the assault], I saw that [the victim] was, you know, fell, fell down, he was down on the ground, and I didn't know what happened * * * I heard somebody screaming, that [is what woke] me up."

{¶ 19} Thomas Stephens, the eyewitness who called 9-1-1 and had attempted to assist the victim, next testified. Stephens testified that on the night of September 1, 2022, he was riding an electric scooter through downtown Toledo, when he came upon the incident outside of the Cock N' Bull as it was unfolding. Stephens testified,

> I ended up hearing a bunch of commotion and yelling, and ended up seeing two guys out in front of [the] Cock N' Bull yelling at each other, and then eventually [the victim] got hit [by appellant] * * * as I was trying to help [the victim], [appellant] was basically threatening me that he was going to hit me next, so I just kind of [tried] to ignore him and help [the victim] * * * two or three minutes after that, [appellant] just went running.

{¶ 20} Ryan Shaffer, a bartender at the Cock N' Bull at the time of the incident next testified. Shaffer testified that on the night of the incident, prior to the assault, he

6.

witnessed appellant exchange words with the victim inside the bar. Shaffer testified, "I did overhear them exchange words from across the bar, but * * * they weren't like standing next to each other." Shaffer elaborated that following the initial verbal exchange between appellant and the victim, Shaffer heard appellant tell his friend, "I'm going to fuck that dude [the victim] up."

{¶ 21} Regarding the subsequent assault outside of the bar, Shaffer testified, "I came outside and found [the victim] on the ground and [appellant's] friends were kind of pulling him away from the area, and I heard bystanders pointing at [appellant] saying that he struck [the victim]."

{¶ 22} The defense first called Adam Arquette, a co-worker of appellant, who was with appellant that evening, to testify. Arquette testified that although they didn't know the victim, the victim had tried to insert himself into their group several times over the course of the evening. Arquette testified, "[H]e's trying to involve himself, include himself in our group * * * I did see [the victim] reach his hand to try to fist bump [appellant]."

{¶ 23} Appellant elected to testify on his own behalf. Appellant acknowledged drinking multiple beers and shots of liquor on the night of the incident. In an attempt to rebut the multiple witnesses who testified that the victim had aggravated him throughout the evening, when attempting to fist bump him and later inserting himself into appellant's group of friends, appellant testified, regarding the victim, "I mean, he was just a happy drunk. He looked like he was having a good time * * * but he was like all over the place * * * he came, joined our party and just kind of just stood there, for real."

7.

**{¶ 24}** As specifically pertinent to his self-defense of another claim, appellant testified,

> [S]o as we [are] out there [outside of the bar after closing time], you know, obviously [the victim came] walk[ing] up to us[,] kind of just standing there, and one thing led to the next, like, quick he walked up to the guy that was [sleeping] on the bench and started punching * * * in a split second I'm like what is going on, and I walked up to him and I punched [the victim].

**{¶ 25}** Upon cross-examination, appellant acknowledged that he punched the victim in the head with such force that victim fell to the concrete pavement, and appellant fell on top of him as he struck the pavement. Appellant further acknowledged that while he immediately got up, the victim did not move, and remained down on the pavement. Appellant nevertheless denied realizing that he had injured the victim. Appellant also acknowledged that although he claimed that he perceived that he needed to defend Nguyen from the victim, Nguyen had remained asleep, uninjured on the bench, following the victim's allegedly misinterpreted efforts to rouse Nguyen.

**{¶ 26}** While appellant maintains upon appeal that he was not at fault in creating the situation giving rise to the affray, the record shows that after an evening of being agitated by the victim, appellant observed the victim attempting to awaken Nguyen with insufficient force to do so, yet appellant then elected to punch the victim in the face with such force that the victim's teeth were knocked out and he fell, striking his head on the concrete pavement, which occurred after appellant had earlier announced that he was going to, "fuck that dude up." All of which was ostensibly done to protect a sleeping, uninjured person. This is unconvincing and counter to the above-detailed testimony and evidence.

8.

**{¶ 27}** Given these facts and circumstances, we find that the record shows that appellant created the situation giving rise to the affray, did not have reasonable grounds to believe Nguyen was in imminent harm, and used more force than was reasonably necessary against the claimed risk of harm to Nguyen.

**{¶ 28}** Accordingly, we find that the record shows that the state disproved the self-defense elements beyond a reasonable doubt, such that the felonious assault conviction was not against the manifest weight of the evidence on the basis of an erroneous rejection of appellant's self-defense of another claim. We find appellant's first assignment of error not well-taken.

**{¶ 29}** In appellant's second assignment of error, appellant similarly argues that the felonious assault conviction was against the manifest weight of the evidence. We do not concur.

**{¶ 30}** As held by this court in *State v. Costilla*, 2024-Ohio-3221, ¶ 46 (6th Dist.),

> The test of manifest weight of the evidence * * * applies to the prosecution's burden of persuasion. *Messenger* at ¶ 26. A challenge to a conviction based on the manifest weight of the evidence questions whether the trial court could find a greater amount of credible evidence was admitted at trial to sustain that decision than not. *Manning* at ¶ 41, citing *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5847, 71 N.E.3d 180, ¶ 75, citing *Thompkins* at 387, 678 N.E.2d 541. In reviewing a verdict against the manifest weight of the evidence, we give deference to the trial court's credibility determinations if the testimony of a single witness, if believed, will support a conviction. *Manning* at ¶ 41-42, citing *Meyers*, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 140-141.

**{¶ 31}** In conjunction, R.C. 2903.11(A)(1), (D) establishes, in relevant part, "No person shall knowingly * * * cause serious physical harm to another * * * Whoever

9.

violates this section is guilty of felonious assault * * * [F]elonious assault is a felony of the second degree."

{¶ 32} In support of the second assignment of error, appellant subjectively denies that he intended to cause serious physical harm to the victim when striking him in the head with his fist, after stating that was going to, "fuck that dude up." Appellant unpersuasively testified, "I mean, it was one punch * * * I didn't think I was going to severely hurt [the victim], I just didn't."

{¶ 33} Appellant's self-serving denial of intent to injure runs counter to the eyewitness testimony of Shaffer, who heard appellant say, "I'm going to fuck that dude up", prior to the incident, as well as the testimony of Arquette and appellant himself, both reflecting appellant's escalating aggravation at the victim's attempts over the course of the evening at inserting himself into appellant's group of friends; including, attempting to fist bump appellant, trying to hang out with the group inside the bar, and then standing with them outside of the bar after closing, just prior to the incident.

{¶ 34} In addition, the record reflects facts and circumstances which show that the risk of serious physical harm to the victim was reasonably foreseeable as a natural result of appellant's voluntary actions. *State v. Young*, 2013-Ohio-1247, ¶ 13 (10th Dist.). Appellant, while in a state of agitation directed at the victim, ran up to him, and punched him squarely, forcefully in the face, knocking them both down onto the concrete surface upon which they had been standing. Despite appellant's claim to the contrary, it is not reasonable to maintain that a risk of serious physical harm was not foreseeable, as a natural result of such a series of actions.

10.

{¶ 35} We find that the record shows that a greater amount of credible evidence was admitted at trial to sustain the decision than not. The state satisfied the burden of persuasion. We find appellant's second assignment of error not well-taken.

{¶ 36} In the third assignment of error, appellant argues that the medical records of the victim, admitted via joint, unqualified stipulation of the parties, were improperly used during trial. We do not concur.

{¶ 37} Appellant acknowledges that,

Medical records are admissible as exceptions to hearsay pursuant to Evid.R. 803(4), which defines such statements as: Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause of external source thereof in so far as reasonably pertinent to diagnosis or treatment.

{¶ 38} In support of the third assignment of error, appellant states, "[T]he medical records appear to have been admitted in an attempt to provide medical context to explain the fact that the victim did not appear at trial, and * * * to provid[e] evidence that the victim suffered a traumatic brain injury in this incident."

{¶ 39} Conspicuous by its absence, appellant's third assignment of error is wholly unaccompanied by legal authority, and by evidence that the disputed medical records testimony, which appellant concedes fall within the Evid.R. 803(4) hearsay exception, was prejudicial to appellant, so as to arguably constitute error.

{¶ 40} The transcripts of the trial proceedings reflect that the state conveyed to the trial court, "And as far as [the victim's] condition * * * I'm approaching you with what

11.

has been marked as State's Exhibits 14 and 14A. I believe they are admitted by stipulation." Counsel for appellant thereafter confirmed, "Yes, Judge, that is correct."

{¶ 41} Officer Tucker, one of the officers who responded to the scene of the incident, was next called to testify. Tucker was presented with a portion of the stipulated medical records and was asked several questions regarding their content. Tucker was first asked to explain the victim's physical condition. Tucker testified, "I know that he was suffering from a traumatic brain injury. I know that when he was struck, fragments of his teeth actually went into his lungs * * * I also had been updated that he's not responsive and doesn't have any functioning motor skills."

{¶ 42} Tucker was next asked to read aloud the diagnosis portion of the medical records. Tucker read from the records, "Subdural hematoma, uncal herniation, subarachnoid hemorrhage, skull fracture, acute respiratory failure * * * cerebral edema, subarachnoid hematoma with loss of consciousness, cerebral infarction due to bilateral occlusion of posterior cerebral arteries, communicating hydrocephalus, traumatic brain injury with loss of consciousness."

{¶ 43} Appellant summarily argues that Tucker's testimony regarding the jointly stipulated medical records "was an obvious defect in the proceedings, and impacted the outcome of the trial, by allowing incorrect and prejudicial testimony." Appellant does not dispute the veracity of the medical records, or the veracity of the testimony affirming portions thereof.

{¶ 44} As held in *Winfield v. Howe*, 2006-Ohio-276, ¶ 29 (8th Dist.), "[Appellant] stipulated to the authenticity of the medical records in their entirety without objecting to

12.

or preserving the right to object to hearsay contained therein. Hence, [appellant] has waived his right to object. See *Wilson v. LTV Steel Co*. (June 11, 1992), Cuyahoga App. Nos. 59515 & 59955." That is likewise the scenario manifest in this case.

{¶ 45} In conjunction, as held in *Presjak v. Presjak*, 2010-Ohio-1455, ¶ 40, 49 (11th Dist.),

> When the parties have agreed, without objection and with the judge's approval, to enter into stipulations for the record, the court will not consider objections to such stipulations on appeal. *Booth v. Booth*, 11th Dist. No. 2002-P-099, 2004-Ohio-524, ¶ 9, quoting *DiGuilio v. DiGuilio*, 8th Dist. No. 81860, 2003-Ohio-2197, ¶ 32 * * * [appellant] cannot now contest the agreed-upon stipulations made on the record and in an open hearing, with both parties and their respective counsel present.

{¶ 46} We find that appellant has failed to demonstrate prejudice by Tucker's testimony regarding the victim's jointly stipulated medical records, and had specific claims of prejudice been made, in accord with *Winfield*, such claims would be subject to waiver on appeal. We find appellant's third assignment of error not well-taken.

{¶ 47} In appellant's fourth assignment of error, appellant again argues that the trial court erred in allowing Tucker to testify about his review of the medical records. Specifically, appellant cites to Tucker being asked, "[D]o you know if there's any chance of recovery [for the victim]?" Tucker replied, "I've been informed he does not." On this basis, appellant summarily concludes that the trial court improperly permitted the, "extract[ion] of a medical opinion from a detective."

{¶ 48} We note that the fourth assignment of error is likewise devoid of accompanying legal authority. Apart from the absence of supporting legal authority, we reiterate that appellant has failed to demonstrate prejudice in relation to Tucker's

13.

testimony, including the response of, "I've been informed he does not." In conjunction, the victim's medical records, admitted into evidence by stipulation, without conditions or qualifications, reflected the victim's prognosis, regardless of Tucker's above-quoted confirmation of same. Appellant has not demonstrated prejudice in connection to Tucker's testimony confirming information already present in the record of evidence by unrestricted stipulation. We find appellant's fourth assignment of error not well-taken.

{¶ 49} In the fifth assignment of error, appellant argues that counsel's failure to object to Tucker's testimony regarding the content of the medical records, as discussed in detail above in response to appellant's third and fourth assignments of error, constituted ineffective assistance of counsel.

{¶ 50} As held by this court in *State v. Schramm*, 2022-Ohio-1535, ¶ 10 (6th Dist.),

> The Sixth Amendment to the United States Constitution guarantees defendant the effective assistance of counsel * * * [T]he defendant must meet the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) * * * That is, the defendant must first show that counsel's performance was deficient. *Id*. Second, the defendant must demonstrate prejudice resulting from councils deficient performance. *Id*.

{¶ 51} Given our determination in response to appellant's third and fourth assignments of error, finding no impropriety in Tucker's testimony regarding the victim's medical records, it cannot be shown that the outcome of this matter would have been different had trial counsel issued meritless objections to that testimony. We find appellant's fifth assignment of error not well-taken.

14.

**{¶ 52}** On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See, also*, 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Thomas J. Osowik, J. | |
| | JUDGE |
| Christine E. Mayle, J. | |
| | JUDGE |
| Charles E. Sulek, P.J. | |
| CONCUR. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.