[Cite as *State v. Stokes*, 2025-Ohio-2246.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240420 |
| | | TRIAL NO. C/23/CRB/19312 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| KENYETTA MARIE STOKES, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/27/2025 per order of the court.**

**By:**_____
     **Administrative Judge**

[Cite as *State v. Stokes*, 2025-Ohio-2246.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


|                              |   |                                  |
|------------------------------|---|----------------------------------|
| STATE OF OHIO,               | : | APPEAL NO. C-240420              |
|                              |   | TRIAL NO.  C/23/CRB/19312        |
| Plaintiff-Appellee,          | : |                                  |
|                              |   |                                  |
| vs.                          | : |                                  |
|                              |   | *O P I N I O N*                  |
| KENYETTA MARIE STOKES,       | : |                                  |
|                              |   |                                  |
| Defendant-Appellant.         | : |                                  |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 27, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins*, for Defendant-Appellant.

**NESTOR, Judge.**

**{¶1}** This dispute arose when defendant-appellant Kenyetta Marie Stokes slammed her apartment door on the victim. The victim was Stokes's landlord's son. He attempted to enter her apartment to see her progress in removing her personal items from the unit when she slammed the door shut. The victim reported the incident to police, and the State charged Stokes with assault. After a bench trial, where Stokes claimed that she acted in self-defense, the trial court found her guilty. She now appeals to this court, asserting four assignments of error pertaining to the trial court's judgment and the trial court's application of Ohio's self-defense law. After reviewing the record and relevant caselaw, we overrule Stokes's assignments of error and affirm the judgment of the trial court.

## I. *Factual and Procedural History*

**{¶2}** At the time the incident occurred, Stokes rented an apartment unit in a building owned by the victim's father. While the victim's father owned the building, the victim performed most of the tasks a landlord would. He flew into Cincinnati from Georgia at the time Stokes's lease was set to end on October 31, 2023. Several days before, a different unit in the building caught fire, so the victim gave Stokes until November 4, 2023, to remove her belongings from her unit. The victim stated that he did not allow Stokes to physically reside in the unit beyond October 31.

**{¶3}** At approximately 10:00 p.m. on November 1, 2023, the victim entered Stokes's unit to survey her progress in removing her belongings and to see what repairs or touch-ups needed to be done before rerenting the unit to the next tenant. When he entered, Stokes's belongings were still there. Approximately 20 minutes later, the victim entered the apartment again, and it was in the same condition. The events at the center of this case occurred the next day, November 2, 2023.

3

{¶4}  At 10:53 p.m. on November 1, the victim emailed Stokes and informed her that he would come by her unit the following day to assess her progress and the state of the unit.  On the morning of November 2, Stokes responded to the victim's email.  She told him to stay out of her apartment until she informed him that she had fully removed her belongings or until November 4, 2023.  At some point during the day on November 2, 2023, the victim entered Stokes's unit a third time.  This time, he brought along M.S., who worked for a property rental company that he hired to assist in rerenting Stokes's unit.  The victim claims that he "buzzed" into Stokes's unit, and he and M.S. testified  that he knocked on Stokes's door and announced himself several times before unlocking the door with his key and opening it.  Stokes refutes that any of this happened.

{¶5}  Before he could gain entry, the heavy metal door slammed shut on the victim.  No one on the inside of the door said anything.  M.S. testified that the impact from the door knocked the victim to the ground.  The victim testified that the door hit his head and torso, and that the contact with the door broke his eyeglasses, damaged his wallet, and damaged the items within his wallet.  Stokes testified that she only heard the door open, and because she was alone and not expecting any company, she quickly shut the door (with no resistance), locked it, and went back to what she was doing.  She testified that she did not hear anything from the other side of the door.

{¶6}  Shortly thereafter, the victim called the police, and several days later, the State charged Stokes with assault under R.C. 2903.13.  At the bench trial, she claimed self-defense.  Despite that, the trial court found her guilty.

{¶7}  Stokes now appeals to this court, asserting four assignments of error. She contends that there was insufficient evidence proving her identity and knowledge, the judgment was against the manifest weight of the evidence, the State failed to

4

disprove her self-defense claim beyond a reasonable doubt, and the trial court used the incorrect self-defense standard. We disagree.

## II. *First Assignment of Error*

**{¶8}** Stokes alleges that the State did not present sufficient evidence as to her identity and knowledge in committing the assault. In reviewing a challenge to the sufficiency of the evidence used to support a criminal conviction, we "must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Anderson*, 2017-Ohio-8641, ¶ 10 (1st Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *Jenks* at paragraph two of the syllabus. As this is a question of law, we review the evidence de novo. *Id.*, citing *In re D.S.*, 2013-Ohio-4565, ¶ 6 (1st Dist.).

**{¶9}** First, we highlight the fact that at trial Stokes presented a self-defense claim. In presenting that defense, she admitted to committing the act (and all its related elements) but asserted self-defense as justification for doing so. *See State v. Martin*, 21 Ohio St.3d 91, 94 (1986), citing *State v. Poole*, 33 Ohio St.2d 18, 19 (1973) (Self-defense "admits the facts claimed by the prosecution and then relies on independent facts or circumstances which the defendant claims exempt him from liability."). Therefore, by way of her self-defense claim, Stokes admitted that she was the individual that committed the act and that she did so with the requisite mens rea.

**{¶10}** Beyond that, the State presented independently sufficient evidence to prove the crime charged. The State charged Stokes with assault under R.C. 2903.13, which states that "[n]o person shall knowingly cause or attempt to cause physical harm

to another or another's unborn."

**{¶11}** "'Like any fact, the state can prove the identity of the accused by "circumstantial or direct" evidence.'" *State v. Brickman*, 2023-Ohio-2031, ¶ 23 (11th Dist.), quoting *State v. Tate*, 2014-Ohio-3667, ¶ 15, citing *Jenks*, 61 Ohio St.3d at 272 and 273. For one, Stokes lived in the unit that the victim attempted to enter. The victim also emailed Stokes informing her that he would enter her unit on November 2, and she responded telling him not to. Viewing this evidence in a light most favorable to the prosecution, there was sufficient evidence that Stokes was the individual who committed the act.

**{¶12}** We come to the same conclusion on Stokes's argument that the State provided insufficient evidence of her knowledge. "'[K]nowingly is not defined as an intentional or purposeful action.'" *State v. Wacasey*, 2025-Ohio-1257, ¶ 12 (8th Dist.). "'[A]ssault does not require that a defendant intend to cause physical harm, but "only requires that the defendant acted with awareness that the conduct probably will cause such harm."'" *Id*. at ¶ 13, quoting *State v. Pierce*, 2023-Ohio-528, ¶ 24 (8th Dist.), quoting *State v. Lucas*, 2021-Ohio-2721, ¶ 21 (11th Dist.), *State v. Skjold*, 2004-Ohio-5311, ¶ 24 (11th Dist.), and *State v. Lloyd*, 2021-Ohio-1808, ¶ 51 (8th Dist.).

**{¶13}** The victim testified that he "buzzed" into the unit, and he and M.S. testified that he knocked and announced himself before opening the door. The victim also sent an email the night before informing Stokes that he intended to come by her unit on November 2 to see her progress in packing. A rational trier of fact could infer that Stokes knew the victim would stop by her unit that day, and that she knew he was on the outside of the metal door she slammed shut (which is likely to cause harm), because he had "buzzed" in and knocked and announced himself.

**{¶14}** Accordingly, we overrule Stokes's first assignment of error.

6

### III.   Fourth Assignment of Error

{¶15} Due to the nature of Stokes's fourth assignment of error, we address it before her second and third assignments.  In her fourth assignment of error, Stokes argues that the trial court applied the incorrect self-defense standard in reaching its decision.  Specifically, she asserts that the trial court never explicitly addressed her self-defense claim and rested its decision solely upon its finding that the State proved each of the necessary elements of assault.  "We review de novo whether the trial court applied the proper legal standard . . . ." *State v. Williams*, 2020-Ohio-5245, ¶ 5 (1st Dist.), citing *State v. Petway*, 2020-Ohio-3848, ¶ 38 (11th Dist.).

{¶16} Despite Stokes's assertions, the trial court's reasoning hinged on its conclusion that Stokes knew of the victim's intent to stop by her unit and that he made his presence known.  Because of that, the trial court concluded that it did not believe that Stokes thought an intruder was entering her unit.  Without explicitly stating the standard word for word or which element it believed the State disproved, the trial court's decision was that Stokes did not have a bona fide belief of imminent danger of bodily harm.  There is nothing that Stokes points to in the record indicating that the trial court misapplied the self-defense standard.  And she points to no legal authority stating that the trial court is required to explicitly state the standard and which part the State disproved.

{¶17} For those reasons, we overrule Stokes's fourth assignment of error.

### IV.   Second & Third Assignments of Error

{¶18} In her second and third assignments of error, Stokes makes two separate but related arguments.  In her second assignment, she asserts that the trial court's judgment was against the manifest weight of the evidence.  In her third assignment of error, Stokes argues that the State failed to disprove her self-defense

claim beyond a reasonable doubt. The same standard of review applies to each assignment.

**{¶19}** Once a defendant puts forth sufficient evidence to demonstrate that they acted in self-defense, the burden shifts to the State to disprove beyond a reasonable doubt that the defendant did, in fact, act in self-defense. *See State v. Messenger*, 2022-Ohio-4562, ¶ 25-26. The Ohio Supreme Court held that the "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion" in self-defense claims. *Id.* at ¶ 26.

**{¶20}** When deciding whether a judgment entered by the trial court is against the manifest weight of evidence, we "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. The manifest weight of the evidence standard refers to whether there is a "'greater amount of credible evidence . . . to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). We must look to and weigh the "'evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether . . . the [fact finder] clearly lost its way and created such a manifest miscarriage of justice'" so as to justify reversal. *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶21}** Again, due to the nature of her self-defense claim, Stokes admitted that she committed the act. Therefore, her argument hinges upon whether the trial court's finding that the State disproved at least one element of her self-defense claim beyond a reasonable doubt was against the manifest weight of the evidence. As the fact finder, the trial court had to determine whether the State disproved beyond a reasonable doubt that Stokes "'(1) [] was not at fault in creating the situation giving rise to the affray; (2) [] (even if mistaken) had a bona fide belief that [s]he was in imminent

danger of any bodily harm; and (3) [believed] the only means to protect h[er]self from such danger was the use of force not likely to cause death or great bodily harm.'" *State v. Eddy*, 2022-Ohio-3965, ¶ 15 (3d Dist.), quoting *State v. Chavez*, 2020-Ohio-426, ¶ 40 (3d Dist.), citing *State v. Vu*, 2010-Ohio-4019, ¶ 10 (10th Dist.). As stated above, the trial court determined that Stokes did not have a bona fide belief that she was in imminent danger of any bodily harm.

**{¶22}** The victim emailed Stokes on the night of November 1, informing her that he would stop by her unit the next day to see her progress in vacating the unit. The victim testified that he "buzzed" into the unit, and he and M.S. testified that he knocked on the door and announced himself several times before entering. Therefore, there was evidence that Stokes knew the victim intended to come to the unit and evidence (if believed) that the victim identified himself before opening the door. Stokes was also cognizant of the fact that her door had been locked and the person opening the door had unlocked the door, with no indication that the lock had been "picked." As the "landlord," the victim had a key. This evidence could lead a fact finder to conclude that Stokes knew it was the victim on the other side of the door, and because of that, that she did not fear bodily harm.

**{¶23}** Stokes presented evidence that she did not know it was the victim entering her unit and that she did not hear anyone announce themselves or "buzz in" before opening the door. However, that does not necessitate a reversal of the trial court's judgment as against the manifest weight of the evidence. When the trial court evaluates the evidence before it, it is "'free to believe some, all or none of each witness's testimony and [to] separate the credible parts of the testimony from the incredible parts.'" *State v. Griffin*, 2024-Ohio-5846, ¶ 21 (6th Dist.), quoting *State v. Greer*, 2023-Ohio-103, ¶ 41 (6th Dist.). When evidence is contradictory, "the trial court [is]

in the best position to weigh the evidence and to judge the witness's credibility." *Id.*, citing *State v. Speaks*, 2024-Ohio-15 (12th Dist.).

**{¶24}** This case came down to the credibility of witnesses, and the trial court stated that it did not find Stokes's version of events as credible as the victim's and M.S.'s versions. The trial court made a credibility determination, and thus, we cannot say that it clearly lost its way and created a manifest miscarriage of justice.

**{¶25}** For those reasons, we overrule Stokes's second and third assignments of error.

### V.    Conclusion

**{¶26}** Based upon the foregoing analysis, we overrule all four of Stokes's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE, P.J.,** and **MOORE, J.,** concur.